UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 1:94-cr-296-11 (RCL) |
| DAVID E. WINSTON, | |
| *Defendant*. | |

## MEMORANDUM OPINION

In 1995, defendant David Winston was sentenced to an aggregate term of life plus sixty years' imprisonment for distributing significant quantities of crack cocaine and for murdering two rival drug dealers. ECF No. 151. Now, twenty-six years later, Winston moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 232. In support of his motion, Winston claims that the COVID-19 pandemic, his medical problems, the length and harshness of his confinement, his substantial efforts at rehabilitation, and his age at the time of the crimes amount to an "extraordinary and compelling" circumstance justifying his release. *Id.* at 20–33. He further argues that the relevant § 3553(a) factors "strongly support" his immediate release. *Id.* at 35–47. The Government opposes Winston's motion, arguing that that Winston has fully recovered from COVID-19 and refuses to be vaccinated. ECF No. 238 at 1. Winston timely replied. ECF No. 242. Upon consideration of the parties' filings, ECF Nos. 232, 238, 242, the attachments thereto, and the record herein, the Court will **DENY** Winston's motion for compassionate release, ECF No. 232.

## I. BACKGROUND

### A. Facts & Procedural History

In the early nineties, the Fulton Hotel was a hotspot for crack-cocaine dealing in Washington, D.C. Presentence Investigation Report ("PSR") at ¶¶ 14–18.[1] Beginning in early 1993 and continuing until June of that year, defendant Winston was the hotel's crack-cocaine supplier. *Id.* at ¶ 20. During this time, Winston sold the leader of the hotel's drug-distribution organization (Marlene Parks) as much as one ounce of cocaine per week. *Id.* at ¶¶ 14 & 20. And when two rival drug dealers threatened his business, he brutally murdered them both.

Winston murdered his first victim, Raymond Williams, by shooting him fourteen times as he stood in the lobby of the hotel. *Id.* at ¶ 14. Winston's second victim, John Maier, was murdered five weeks later. *Id.* At the time of his murder, Maier was "independently dealing drugs in the hotel while he worked the front desk late at night." *Id.* at ¶ 21; *see id.* at ¶ 14. When Parks told Winston about Maier's dealing and accused Maier of stealing drugs, Winston went to Maier's hotel room and demanded he return the drugs. *Id.* at ¶ 22. Maier refused, so Winston shot him twenty-one times. *Id.* At the time of the murder, Maier was unarmed and laying in his bed. *Id.* at ¶ 14. Winston later learned that Parks had fabricated the story about the stolen drugs. *Id.* at ¶ 22.

In June 1993, Winston was arrested on murder charges brought in the Superior Court for the District of Columbia. *Id.* at ¶ 20 n.2. Following his arrest, a federal grand jury indicted Winston in two separate cases in this Court. First, in December 1994, Winston was indicted in Case No. 95-CR-7 for (1) conspiring to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(A)(iii); (2) using a firearm during a drug-trafficking

---

[1] Winston's PSR was prepared before the entries on the docket for this matter became electronic. Accordingly, by separate order today, the Court directed the Clerk of Court to file the PSR on the docket, subject to the appropriate access restrictions.

2

offense, in violation of 18 U.S.C. § 924(c)(1); (3) first-degree murder while armed in violation of D.C. Code §§ 22-2401 & 22-3202; (4) possessing a firearm during a crime of violence or dangerous offense, in violation of D.C. Code § 22-3204(b); and (5) unlawfully distributing cocaine base and aiding and abetting the same, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) & 18 U.S.C. § 2. *Id* at ¶ 2.

One month later, a federal grand jury indicted Winston in the present case (94-CR-296) for multiple counts of (1) unlawfully using a communication facility, in violation of 21 U.S.C. § 843(b); (2) unlawfully distributing five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(iii); (3) unlawfully distributing cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a); and (4) and unlawfully possessing with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C). *Id.* at ¶ 3.

In February 1995, pursuant to a global plea agreement, Winston pleaded guilty to three offenses stemming from his drug dealing and two murders. *See* ECF No. 238 at 3–4. In federal Case No. 95-CR-7, Winston pleaded guilty to unlawfully distributing five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(iii). PSR at ¶ 12; ECF No. 238 at 3–4. And in the present case (94-CR-296), Winston pleaded guilty to second-degree murder while armed (as a lesser included offense of first-degree murder while armed), in violation of D.C. Code §§ 22-2403 & 3202. PSR at ¶¶ 2 & 12; ECF No. 238 at 4. Finally, Winston pleaded guilty in D.C. Superior Court to a second count of second-degree murder while armed. *Id.* at ¶ 12.

On June 30, 1995, the Hon. Joyce H. Green sentenced Winston to 121 months' imprisonment, followed by five years' supervised release, for the narcotics offense. ECF No. 238 at 4. Judge Green also imposed a consecutive sentence of fifteen years to life for Winston's first count of second-degree murder while armed. *Id.* Two weeks later, the Hon. Shellie F. Bowers of

the D.C. Superior Court sentenced Winston to fifteen years to life for his second count of second-degree murder while armed, which would run consecutively to both federal sentences. *Id.*

As of today, Winston has completed his 121-month sentence for the narcotics offense. *Id.* at 5. And in February 2021, the Hon. Craig Iscoe of the D.C. Superior Court granted Winston's motion for compassionate release on his second count of second-degree murder, thereby reducing his sentence on that offense to time served. *Id.* at 5. All that remains, then, is Winston's sentence of fifteen years to life for his first count of second-degree murder while armed. *Id.* at 7. He is currently imprisoned at FCI Allenwood Medium and has served approximately 17.5 years of that fifteen-years-to-life sentence. *Id.* (noting that Winston completed his 121-month sentence for the drug offense on October 20, 2003). In April of this year, the U.S. Parole Commission set Winston's release date for January 4, 2022. ECF No. 242 at 1.

**B. Motion for Compassionate Release**

Winston now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 232. In support of his motion, Winston argues that the COVID-19 pandemic, coupled with his hypertension and obesity, amount to "extraordinary and compelling reasons" warranting a sentence reduction. *Id.* at 20–28. He further argues that his young age at the time of the crimes, his "substantial" efforts at rehabilitation, the fact that he has already served more than twenty-five years in prison, together with Judge Iscoe's grant of compassionate release on his first murder charge, also qualify as extraordinary and compelling reasons justifying a sentence reduction. *Id.* at 33–35. Finally, Winston claims that the relevant § 3553(a) factors support a sentence reduction, because he had a difficult upbringing, has "shown strong rehabilitation" while in prison, has accepted responsibility for his crimes, and has matured greatly since the time of the offenses. *Id.* at 35–48.

The Government opposes Winston's motion. ECF No. 238. It argues that no extraordinary and compelling reasons exist because Winston has recovered from COVID-19 without any serious complications and has refused the COVID-19 vaccine. *Id.* at 1. The Government further adds that no inmates or staff are currently testing positive at FCI Allenwood Medium and that roughly half the inmates there have already been vaccinated. *Id.* at 27–28.

Winston timely replied. ECF No. 242. His motion is now ripe for consideration.

## II. LEGAL STANDARD

A defendant seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). To be eligible for a reduction, two threshold requirements must be met. First, the defendant must have exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). This requires a showing that "defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or that 30 days have elapsed since "the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Second, the defendant must show that "extraordinary and compelling reasons warrant" a reduction of his original sentence. *Id.*[2]

If the Court finds that the defendant has met his burden of showing these two requirements, the Court "may reduce the term of imprisonment (and may impose a term of probation or

---

[2] When the Bureau of Prisons files a motion for compassionate release on a defendant's behalf, a third threshold requirement must be met. *See United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021). In those cases, a policy statement issued by the U.S. Sentencing Commission requires a finding that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before the Court may reduce the defendant's sentence. U.S.S.G. § 1B1.13; *see Long*, 997 F.3d at 355. Here, however, Winston moved for a sentence reduction on his own behalf, so the Sentencing Commission's policy statement does not apply. *Long*, 997 F.3d at 335 ("[I]f a compassionate release motion is not brought by the Director of the Bureau of Prisons, U.S.S.G. § 1B1.13, by its own terms, is not applicable."); *see* ECF No. 232.

5

supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)," after considering the relevant factors set forth in 18 U.S.C. § 3553(a). Those factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct; (3) "to protect the public from further crimes of the defendant"; and (4) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* at § 3553(a)(1)–(2).

### III. DISCUSSION

Though Winston has exhausted his administrative remedies, he has not met his burden of establishing "extraordinary and compelling reasons" warranting a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, the Court must deny his motion. In the sections that follow, the Court will explain each of these holdings.

**A. Winston Has Exhausted His Administrative Remedies**

The Court agrees that Winston has exhausted his administrative remedies. *See* ECF No. 232 at 19; ECF No. 238 at 14–15. On May 11, 2020, Winston sent a letter to the warden of FCI Allenwood Medium asking for a sentence reduction based on his "hypertension, degenerative joint disease, beta thalassemia minor,[ ] age, race, gender, and the COVID-19 pandemic." ECF No. 232-2 at 2. The warden denied his request on May 21, 2020. ECF No. 232-2 at 4. Winston again requested a sentence reduction on March 16, 2021, based on the circumstances mentioned in his first letter as well as his obesity. ECF No. 232-2 at 5. The warden has yet to respond. ECF No. 232 at 20. Accordingly, Winston's motion is properly before the Court. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Winston Has Failed to Establish "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(i)

Winston argues that the COVID-19 pandemic, coupled with his age, race, hypertension, and obesity, amount to extraordinary circumstances justifying a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 232 at 20–28. Winston also claims that, taken together, his young age at the time of the crimes, the fact that he has served a total of twenty-five years in prison, his efforts at rehabilitation, and Judge Iscoe's grant of compassionate release on one of his murder charges, qualify as extraordinary and compelling reasons for his release. *Id.* at 33–47. The Court finds neither theory persuasive.

i. <u>The Risk Posed to Winston by COVID-19 is Not "Extraordinary"</u>

As courts have repeatedly recognized, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Nor do any circumstances unique to Winston transform the COVID-19 pandemic into an "extraordinary" circumstance.

*First*, at age forty-seven, Winston is not at an increased risk of severe illness from COVID-19 based on his age alone. According to the Centers for Disease Control and Prevention ("CDC"), the risk of developing severe illness from the virus "increases for people in their 50s and increases in 60s, 70s, and 80s." Centers for Disease Control and Prevention, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited June 18, 2021). "People 85 and older are the most likely to get very sick." *Id.*

*Second*, although the CDC recognizes that adults of any age with hypertension, obesity, and those "in many racial and ethnic minority groups" "can be more likely to get severely ill from COVID-19," Winston has already contracted and fully recovered from COVID-19. Centers for

7

Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 18, 2021); ECF No. 238 at 28. Indeed, Winston remained asymptomatic while the virus ran its course. ECF No. 238 at 28. And while instances of reinfection have been "reported," the risk of reinfection is rare. Centers for Disease Control and Prevention, *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited June 18, 2021).

*Third*, Winston was offered and refused the Moderna COVID-19 vaccine. ECF No. 238 at 19. As an overwhelming number of district courts have recognized, an inmate who declines the COVID-19 vaccine without a legitimate reason has a "substantially diminshe[d] argument for release." *United States v. Piles*, Case No. 19-CR-292-5, 2021 WL 1198019, at *3 (D.D.C. 2021) ("Courts have recognized—without apparent exception—that a defendant's refusal to be vaccinated substantially diminishes any argument for release premised on the risk posed by COVID-19.") (collecting cases). Though Winston certainly has the right to make his own healthcare decisions, his choice to refuse the vaccine—without, for example, a genuine religious or medical objection—undercuts his argument that the pandemic poses an "extraordinary" circumstance justifying his release.

*Finally*, no inmates or staff at FCI Allenwood Medium are currently testing positive for COVID-19. Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited June 18, 2021). In fact, 56% of inmates in the entire prison complex (FCC Allenwood) have been vaccinated. *See id*; *see also* Federal Bureau of Prisons, *FCI Allenwood Low*, https://www.bop.gov/locations/institutions/alf (last visited June 21, 2021); Federal Bureau of Prisons, *FCI Allenwood Medium*, https://www.bop.gov/locations/institutions/alm (last visited June

21, 2021); Federal Bureau of Prisons, *USP Allenwood*, https://www.bop.gov/locations/institutions/alp (last visited June 21, 2021). Though Winston himself has refused the Moderna vaccine, the fact that many others at FCC Allenwood have been vaccinated reduces his risk of infection. *See* ECF No. 238 at 19. Given these circumstances, the Court is unpersuaded that the COVID-19 pandemic, considered alongside Winston's medical conditions, age, and race, does not amount to an "extraordinary and compelling" reason warranting his release. 18 U.S.C. § 3582(c)(1)(A)(i).

ii. The Other Circumstances Raised by Winston are Not "Extraordinary"

In addition to the risk posed by COVID-19, Winston also argues that a handful of other circumstances, considered together, qualify as "extraordinary and compelling" reasons justifying relief. ECF No. 232 at 33–47; *see* ECF No. 242 (Winston's reply brief arguing that it is the *combination* of unique factors" that, "altogether qualify as an extraordinary and compelling reason" supporting his motion). Those circumstances include: his young age at the time of the crimes, his "substantial" efforts at rehabilitation, the fact that he has already served more than twenty-five years in prison, and Judge Iscoe's grant of compassionate release on his first murder charge in February 2021. *Id.* at 33–35. But whether the Court considers each of these circumstances alone or together, it finds that they do not meet the high bar of "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A).

The Court begins with Judge Iscoe's February 2021 grant of compassionate release on Winston's D.C. Superior Court murder conviction. *See* ECF No. 232-4. Though Judge Iscoe found that Winston's obesity and hypertension amounted to "extraordinary and compelling" reasons, *id.* at 19, the circumstances have changed since Judge Iscoe made that finding. Notably, Judge Iscoe granted Winston's motion "against the backdrop of a climbing rate of positive COVID-19 cases

9

in correctional institutions." ECF No. 232-4 at 20. Currently, however, there are *zero* positive COVID-19 cases at Winston's facility. ECF No. 238 at 27–28. Additionally, at the time Judge Iscoe considered Winston's request for compassionate release, Winston had not yet been offered the Moderna COVID-19 vaccine. *See* ECF No. 232-4 at 20, 21; ECF No. 238 at 9. Given this change in circumstances since Judge Iscoe's ruling, the Court gives little weight to Winston's earlier grant of compassionate release.

Similarly, the Court finds that the U.S. Parole Commission's decision to release Winston on January 4, 2022 does not amount to an "extraordinary and compelling" reason warranting a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). As another member of this Court aptly put it:

> The Parole Commission and a federal court have decidedly different aims with respect to evaluating release requests, and they do so by applying markedly different standards. The federal courts must apply criteria that Congress has established in section 3582(c)(1)(A) . . . to determine whether there are extraordinary and compelling reasons to modify a defendant's sentence, and if so, whether the purposes of punishment require rejection of the release request. By contrast, the Parole Commission seeks to determine a defendant's "suitability" for release based on specific guidelines . . . This critical distinction necessarily means that the Commission's parole determinations carry little weight in the context of this Court's section 3582(c)(1)(A) analysis.

*United States v. Greene*, Case No. 71-CR-1913, 2021 WL 354446, at *17 (D.D.C. Feb. 2, 2021). Because the Court's and the U.S. Parole Commission's analysis differs, the fact that the Commission granted Winston parole with an expected release date in seven months does not affect the present inquiry.

Finally, none of the other circumstances Winston invokes—his efforts at rehabilitation, the "length and harshness" of his incarceration, and his age at the time of the offense—is "extraordinary." Congress did not define the term "extraordinary," so the Court takes guidance from the text's plain meaning at the time of enactment. *See, e.g, Tanzin v. Tavnir*, 141 S. Ct. 486,

10

491 (2020) ("Without a statutory definition, we turn to the phrase's plain meaning at the time of enactment."). When § 3582 was passed in 1984, "extraordinary" meant (as it still does today) "very exceptional." *Extraordinary*, WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (1984); *see* 18 U.S.C. § 3582 (enacted Oct. 12, 1984). Indeed, this very high bar for a sentence reduction under § 3582(c)(1)(A)(i) makes sense given "the general rule of finality" of sentences. *Dillon v. United States*, 560 U.S. 817, 824 (2010).

Guided by this definition, the Court finds that Winston's efforts at rehabilitation, the duration and harshness of his incarceration, and his young age at the time of the crimes, are not extraordinary, or "very exceptional," circumstances. The fact that Winston has served a portion of his sentence during the COVID-19 pandemic is hardly "extraordinary," as the same can be said for every other inmate that has been in prison since March 2020. *See* ECF No. 242 at 3. Nor is his length of confinement (twenty-five years total) an "extraordinary" circumstance. Many other inmates likewise have served or are serving comparable terms of incarceration. And though the Court commends Winston's rehabilitative efforts while in prison—including his clean disciplinary record in the last fifteen years, high performance at his job with UNICOR, completion of an impressive number of vocational and educational courses, and completion of a drug-education class—the Court is not persuaded that these rehabilitative strides make Winton's situation exceptional. ECF No. 232 at 41–45; *see* ECF No. 2323 at 8–9.

Winston emphasizes that it is the *combination* of all these circumstances that qualify as an "extraordinary and compelling reason." ECF No. 242 at 1. But just as none of these circumstances alone is "extraordinary," the Court finds that the combination likewise does not make Winston's situation exceptional. For these reasons, the Court finds that Winston has not met his burden of establishing "extraordinary and compelling reasons" warranting a sentence reduction under

§ 3582(c)(1)(A)(i). *See Jones*, 836 F.3d at 899 (holding that a compassionate-release movant bears the burden of establishing his eligibility for relief). And because Winston has not shown this threshold requirement for compassionate release, the Court need not consider whether the relevant § 3553(a) factors support a sentence reduction.

## IV. CONCLUSION

For the reasons explained above, Winston's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 232, will be **DENIED** by separate Order.

Date: June 24, 2021

Hon. Royce C. Lamberth
United States District Judge